# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DOLLY CICCARIELLO,**

      **Plaintiff,**

**v.**                              **Case No.  8:07-cv-592-T-30TGW**

**KASH N' KARRY FOOD STORES, INC.,**
**et al.,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Kash n' Karry Food Stores, Inc.'s Dispositive Motion for Summary Judgment (Dkt. 41), Defendants, Cpl. John C. Esposito, Cpl. Thomas Goldberg, Officer Louis Mion, and the Town of Kenneth City's Dispositive Motion for Summary Judgment (Dkt. 46), and Plaintiff's Consolidated Response in opposition to the same (Dkt. 59). The Court, having considered the motions, response, and supporting memoranda, and being otherwise fully advised in the premises, determines Defendants' motions should be granted.

## Background

The facts, viewed in the light most favorable to Plaintiff, reflect the following.[1]  On March 20, 2003, Plaintiff Dolly Ciccariello ("Plaintiff") visited a Kash N' Karry Food Store

---

[1] In considering Defendants' motions for summary judgment, the Court must view the totality of the circumstances in the light most favorable to Plaintiff. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). Accordingly, to the extent the instant facts are in dispute, the Court relies on Plaintiff's version of the facts for purposes of this Order.

located at 4665 66th Street North in the Town of Kenneth City, Florida ("Kenneth City"). Plaintiff was eighty (80) years old at the time of her visit.  While shopping in the produce section of the store, Plaintiff asked an employee for assistance in finding a leafy bunch of celery for a recipe.  The employee informed her the store cuts off the top inch of every bunch, but that some of the bunches contain leaves inside.  As Plaintiff was examining a bunch, three small pieces broke away from one of its stalks.  Plaintiff claims she initially placed the broken pieces, each approximately one inch long, into a plastic bag.  She then placed the bag and remaining bunch of celery into her cart.  Concerned that the bag would fall through the cart, Plaintiff removed the bag from her cart and placed it in her purse. Plaintiff claims the full bunch of celery remained in her cart.[2]

Store Manager Neil Ford ("Ford") observed Plaintiff placing items from her basket into her purse.  Plaintiff claims Ford confronted her in the produce section and asked her what happened to the green things that had been in her basket.  Plaintiff claims she didn't answer him because he failed to identify himself and she did not know who he was.  Ford then followed Plaintiff throughout the store to "help her shop."  Plaintiff claims she later observed Ford's name tag, which identified him as the store manager, while she was shopping in the beverage department.  At this point Plaintiff claims she immediately opened her purse and explained what happened.  Plaintiff claims Ford questioned why she was showing him then, and began shouting for store personnel to call the police.  After showing the pieces to Ford, Plaintiff claims she placed the bag of celery back into her cart next to her

---

[2] Kash N' Karry sold each bunch of celery for the same price regardless of size or number of stalks.

bunch of celery.

Upon receiving a call reporting suspected shoplifting at the store, Kenneth City Police Officers Louis Mion and John Esposito responded to the scene. Officer Esposito was acting as Officer Mion's Field Training Officer as part of a field training program. Corporal Thomas Goldberg also responded to the scene in his capacity as Shift Supervisor. Upon their arrival, Ford explained to the officers that he had observed Plaintiff conceal merchandise inside her purse. Initially, Ford requested that the officers issue Plaintiff a trespass warning rather than arrest her for retail theft.

Plaintiff claims Ford and the three officers observed her paying for all her groceries, including the subject celery.[3] After she paid for her groceries, Plaintiff claims Officer Esposito informed her that he was going to issue her a trespass warning. When asked for her name, Plaintiff claims she responded by saying she had done nothing wrong and questioned the reason for the trespass warning. She claims Officer Esposito told her it was because Ford told him that she stole something.

After being instructed to spell her name, Plaintiff claims she responded by spelling her first name as "D - -" because she goes by the name Dee. She claims that she started to spell her last name as "C-i-c-c-a," but that Officer Esposito lunged for her purse before she could finish. Plaintiff claims she stopped spelling her name because Officer Esposito had

---

[3]Plaintiff has provided a copy of her receipt, which includes a charge for the subject celery. The officers and Ford claim they observed Plaintiff removing the celery from her purse at the checkout counter. Neither the officers nor Ford checked Plaintiff's shopping cart at any point to see if it contained a bunch of celery. Thus, they do not dispute that a bunch of celery could have been in her cart at all times, or the fact that she paid for the celery.

removed her driver's license from her purse.  After he reviewed her license, Plaintiff claims Officer Esposito commented "Oh, New York.  Hey, how did you get here?"  Plaintiff responded by saying "I flew."

Plaintiff claims she was then arrested by the officers at the request of Ford.  She claims the officers twisted her thumbs, pulled her arms behind her back, handcuffed her, and placed her into a police car.  She complained that she was in pain due to her arthritis and asked the officers to loosen the handcuffs.  According to Plaintiff, her request was refused. She was incarcerated for several hours before being released.  Fourteen days after the incident, the Pinellas County State Attorney's Office filed a "No Information."

According to Ford, the police officers arrived at the store as Plaintiff was approaching the checkout counter.  Ford claims he observed Plaintiff remove the bag of celery from her purse and place it on the checkout counter.  He does not recall whether there was a large bunch of celery in her cart and he did not review her receipt.  He claims he initially asked the officers to issue Plaintiff a trespass warning.  After observing Plaintiff's refusal to cooperate with the officers, Ford advised the officers that he wanted her arrested for retail theft as well.

According to Officer Esposito, Officer Mion made initial contact with Plaintiff and asked her for identification.  When Plaintiff refused, Corporal Goldberg stepped in and told her the officers were investigating a possible crime and that she needed to cooperate.  When asked how she got to Sweetbay, Esposito claims Plaintiff responded "by plane."[4]  After Plaintiff identified herself as "D-e Cicca," Esposito asked Plaintiff for her date of birth.  She

---

[4]Esposito claims that at this point, Ford instructed him to charge Plaintiff with theft of the celery.

responded that it was not of his business, pushed him off, and attempted to leave the store.[5] After observing her actions, Ford told the officers he now wanted to press charges for retail theft.  The officers then arrested Plaintiff for retail theft and obstruction by disguise.

As a result of the incident, Plaintiff filed the instant action.  In her Amended Complaint, Plaintiff asserts four counts.  In Counts I and IV, Plaintiff asserts state law claims against Defendant Kash n' Karry Food Stores, Inc., for false arrest/false imprisonment and malicious prosecution.  In Count II, Plaintiff asserts a state law claim against Kenneth City for false arrest.  Count III is Plaintiff's sole federal claim, in which she asserts a Fourth Amendment false arrest claim against Officers Esposito, Goldberg and Mion in their individual capacities pursuant to 42 U.S.C. § 1983.  For the reasons set forth in this Order, the Court determines that Defendants are entitled to summary judgment.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[5]Esposito claims the New York Driver's License was later found in Plaintiff's purse, after she had identified herself as "Dee Cicca."

(1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  Anderson,  477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## Qualified Immunity Standard

Officers Mion, Esposito, and Goldberg argue they are shielded from liability for Plaintiff's claims under the doctrine of qualified immunity.   Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 7 L.Ed.2d 396 (1982).  Because there is no dispute the officers were performing their discretionary functions at the time of the incident, the burden shifts to Plaintiff to show that qualified immunity is not appropriate.  See Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006).

Plaintiff's burden to overcome the qualified immunity defense involves two steps. First, Plaintiff "must establish that the [defendants'] conduct violated a statutory or constitutional right." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed. 272 (2001)).  Next, Plaintiff must show that the violation was clearly established." Id.  The Eleventh Circuit has stated the second step requires a determination by the Court of "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." Davis, 451 F.3d at 762  (quoting Garrett v. Athens-Clarke County, 378 F.3d 1247, 1278-9 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-202)).

In the context of a false arrest claim, an officer "is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances, and possessing the same knowledge as the Defendants could have believed that probable cause existed" to make an arrest. <u>Id.</u> at 762-63 (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 220, 1232 (11th Cir. 2004)).  In determining whether arguable probable cause exists, the Court must look to the totality of the circumstances and construe all facts in the light most favorable to the nonmoving party.  <u>Id.</u>  The nonmoving party's version of the facts must be accepted at this stage of the proceedings, even though the facts as accepted may not be the actual facts of the case.  <u>Id.</u>

The standard for determining whether probable cause exists is the same under Florida and federal law.  <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998).  The only difference with respect to the probable cause analysis is the burden of proof.  <u>Id.</u> at 36. Under Florida law, the existence of probable cause constitutes an affirmative defense to the claim of false arrest and the defendant has the burden of demonstrating its existence.  <u>Id.</u> However, a plaintiff has the burden of demonstrating probable cause with respect to a §1983 claim.  As discussed by the Eleventh Circuit:

> An arresting officer is required to conduct a reasonable investigation to establish probable cause. <u>See</u> <u>Tillman</u>, 886 F.2d at 321; <u>see also</u> <u>Harris v. Lewis State Bank</u>, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information."). An officer, however, need not take "every conceivable step ... at whatever cost, to eliminate the possibility of convicting an innocent person." <u>Tillman</u>, 886 F.2d at 321; <u>see also</u> <u>State v. Riehl</u>, 504 So.2d 798, 800 (Fla. 2d DCA 1987) ("In order to establish the probable cause necessary to make a valid arrest, ... it is not necessary

> to eliminate all possible defenses."). Furthermore, once an officer makes an arrest based upon probable cause, he "need not 'investigate independently every claim of innocence.'" Tillman, 886 F.2d at 321 (internal citation omitted). Probable cause is "judged not with clinical detachment but with a common sense view to the realities of normal life." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir.1990) (internal citation omitted); see also Revels, 666 So.2d at 215.

Id. at 1435 -1436.

## Discussion

Whether arguable cause existed to arrest Plaintiff depends upon what amounts to probable cause under Florida law for retail theft and obstruction.  See Davis, 451 F.3d at 764. Florida's retail theft statute defines "retail theft" as follows:

> "Retail theft" means the taking possession of or carrying away of merchandise, property, money, or negotiable documents; altering or removing a label, universal product code, or price tag; transferring merchandise from one container to another; or removing a shopping cart, with intent to deprive the merchant of possession, use, benefit, or full retail value.

Fla. Stat. § 812.015.  The question at issue is whether Ford and the officers had reasonable cause under the undisputed facts to believe that Plaintiff committed retail theft, not whether Plaintiff was actually guilty of retail theft.  See Rothstein v. Jackson's of Coral Gables, 133 So. 2d 331, 332 (Fla. 3d DCA 1961); See also De Marie v. Jefferson Stores, Inc., 442 So.2d 1014, 1017 (Fla. 3d DCA 1983) (discussing that even if a fact-finder determined the plaintiff had acted in good faith in concealing merchandise in his pocket and removing it from the defendant's store, therefore not being guilty of theft, such a determination would be "irrelevant to the question of the existence of probable cause.").

Plaintiff argues that Ford and the officers, who were all present at the checkout counter, either saw or reasonably should have seen Plaintiff pay for the entire celery bunch and could have either confirmed the same with the cashier or reviewed Plaintiff's receipt. Plaintiff argues that, under these circumstances, it would appear to a cautious man that such an investigation was justified before proceeding. While the issue is a close call with respect to Ford, the Court determines that both the officers and Ford had probable cause to proceed with the arrest.

With respect to the officers, it is undisputed that upon their arrival Ford told them he had observed Plaintiff conceal Kash N' Karry merchandise in her closed purse. The plain language of the statute restricts transferring merchandise from one container to another. Florida courts have held that "[f]irst hand knowledge by an officer is not required; the receipt of information from someone who it seems reasonable to believe is telling the truth is adequate." Weissman v. K-Mart Corp., 396 So. 2d 1164, 1167 (Fla. 3d DCA 1981). The information furnished to the officers by Ford was sufficient to provide them with probable cause to believe Plaintiff committed retail theft. Id.

Moreover, while a closer call, a reasonable officer could have believed probable cause existed to arrest plaintiff for resisting an officer without violence to his or her person pursuant to Section 843.02, Florida Statutes, which provides in pertinent part:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person

of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.[6]

While there is some dispute over how forthcoming and cooperative Plaintiff was with the officers, it is undisputed that she identified herself as "Dee" and began spelling her last name "C-i-c-c-a," at which point Officer Esposito took her purse and removed her driver's license. Thus, her true identity was discovered by Officer Esposito rather than provided voluntarily. When asked how she got there, Plaintiff responded that "she flew."  A reasonable officer could have interpreted Plaintiff's identification of herself and comment about flying to be nonsensical, uncooperative and obstructive to the officers' attempt to issue her trespass warning.  Accordingly, the officers had arguable probable cause to arrest Plaintiff for resisting an officer without violence.

As the officers had probable cause to make the arrest, they did not violate Plaintiff's constitutional rights.  Accordingly, the officers are entitled to qualified immunity. Furthermore, Plaintiff's claim against Kenneth City fails because such claim is based on the officers' lack of probable cause.[7]  Therefore, the Court concludes the officers and the Town of Kenneth City are entitled to summary as to Counts II and III of Plaintiff's Amended

---

[6]The Court notes this is not the obstruction statute Plaintiff was arrested for.  Plaintiff was arrested for obstruction by a disguised person.  Florida Court's have held that giving false information does not constitute obstruction by disguise under Fla. Stat. 843.03.  Barkley v. State, 522 So. 2d 431, 432 (Fla. 1st DCA 1988).  The Supreme Court has recognized probable cause can be established by the facts known by the arresting officer at the time of arrest, regardless of whether such facts are "closely related" to the offense invoked.  Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

[7]Count II of Plaintiff's Amended Complaint was brought against the Town of Kenneth City pursuant to Fla. Stat. § 768.28.  The claim is based on the officers' alleged arrest of plaintiff in the absence of probable cause.

Complaint.

The question of whether Ford had probable cause is a closer call.  In <u>Weissman</u>, a Florida appellate court held that a store manager should have spoken with a cashier before detaining a customer suspected of shoplifting to corroborate the customer's story that the subject items had already been paid for.  <u>Weissman</u>, 396 So. 2d at 1167.  However, the failure of Ford or the officers to speak with the cashier or investigate the items in Plaintiff's cart is irrelevant in the instant case.  It is undisputed that upon initial confrontation, Plaintiff refused to answer Ford's questions about the celery she placed in her purse.  The fact that she did not immediately recognize him or notice his name tag is irrelevant to the determination of probable cause.  Based on Plaintiff's actions in refusing to answer Ford's initial questions and walking away, the Court determines Ford had probable cause at that moment to believe Plaintiff had committed retail theft.  Accordingly, the Court concludes Kash N' Karry Food Stores, Inc. is entitled to summary judgment as to Count IV of Plaintiff's Complaint.[8]

Plaintiff's remaining claim, Count I, asserts a cause of action against Kash N' Karry for malicious prosecution under Florida law.  In order to prove her claim for malicious prosecution, Plaintiff must prove the following six elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4)

---

[8]Fla. Stat. 812.015 authorizes merchants to briefly detain suspected shoplifters.  The statute requires merchants to have probable cause to believe the suspect committed retail theft, and also bars actions against merchants for false arrest and imprisonment.  <u>See</u> <u>Fla. Stat.</u> 812.015.

there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

<u>Alamo Rent-A-Car, Inc. V. Mancusi</u>, 632 So. 2d 1352, 1355 (Fla. 1994). Kash N' Carry argues the Plaintiff has failed to establish the fourth and fifth elements. Probable cause exists in the context of a malicious prosecution claim "where it would appear to a 'cautious man' that further investigation is justified before instituting the (criminal) proceedings.'" Additional facts may be relevant to a claim for malicious prosecution that are not considered with a claim for false arrest. <u>See</u> <u>Food Fair Stores, Inc.</u>, 335 So. 2d 560, 563 (Fla. 2d DCA 1976). In <u>Food Fair</u>, the Court considered the following in affirming a jury's finding of probable cause with respect to a malicious prosecution claim: (i) the plaintiff gave a plausible explanation when questioned, (ii) when accosted by the store's security agent, the plaintiff indicated confusion over whether she had paid for the items allegedly shoplifted, but assured the security guard she intended to do so if she had not, (iii) the cost of the items was a small fraction of the plaintiff's bill, and (iv) there was no investigation into the plaintiff's reputation. <u>Id.</u> at 563.

The Court again recognizes that this is a close issue. Upon consideration, the Court determines that Ford had probable cause to believe retail theft had been attempted. Again, the Court's conclusion stems from Plaintiff's initial reaction to Ford when he approached her in the produce department. After observing the Plaintiff placing items in her purse, and after Plaintiff initially refused to answer his questions about the concealed celery, the Court concludes Ford, and vicariously Kash N' Karry, had probable cause to suspect her of retail

theft and move forward with having her arrested.  Plaintiff has failed to establish an essential element of her claim.  Further, no malice has ben shown or can be inferred.  The Court notes that Ford's initial response was to have a trespass warning issued, rather than arrest, so that Plaintiff would not return to the store.  That initial reaction does not indicate the existence of malice.  Accordingly, Kash N' Karry is entitled to summary judgment with respect to Count I.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants, Cpl. John C. Esposito, Cpl. Thomas Goldberg, Officer Louis Mion, and the Town of Kenneth City's Dispositive Motion for Summary Judgment (Dkt. 46) is **GRANTED**.

2.    Defendant Kash n' Karry Food Stores, Inc.'s Dispositive Motion for Summary Judgment (Dkt. 41) is **GRANTED**.

3.    All pending motions are denied as moot.  The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on September 26, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-592.msj.wpd